**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ALLIED WORLD INSURANCE COMPANY**<br>199 Water Street, 25th Floor<br>New York, NY 10038<br>　　　　　　**Plaintiff,**<br>　　　**v.**<br><br>**CHANGE HEALTHCARE SOLUTIONS LLC**<br>424 Church Street, Suite 1400<br>Nashville, TN 37219<br>　　　　　　**Defendant.** | **Civil Action No.:**<br><br>**JURY TRIAL DEMANDED**<br><br>**Case related to MDL No. 3108** |

Plaintiff, Allied World Insurance Company, by and through undersigned counsel, hereby demands judgment against Defendant, Change Healthcare Solutions LLC, and in support thereof, alleges the following:

**PARTIES**

1.　　Plaintiff, Allied World Insurance Company, is a corporation organized and existing under the laws of the State of New Hampshire and with its principal place of business at 199 Water Street 25th Floor, New York, New York 10038.

2.　　At all times relevant hereto, Plaintiff insured Avatar Holdings LLC d/b/a Avesis and certain of its affiliates, subsidiaries, and/or parent companies as defined and set forth in the relevant insurance contract (collectively "Avatar" or "Insured"). Avatar maintains its principal place of business at 1295 W. Washington Street, Suite 212, Tempe, AZ 85281.

3.　　Defendant, Change Healthcare Solutions LLC, is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business

located at the address above. Defendant is a citizen of Delaware and Tennessee.[1]

## JURISDICTION AND VENUE

4.      Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between parties of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

5.      Plaintiff files this action in this venue for pretrial purposes pursuant to ¶7 of Pretrial Order No. 1 for *IN RE: Change Healthcare Inc. Customer Data Security Breach Litigation*, MDL No. 24-3108 (DWF/DJF), which provides that "[a]ny Plaintiff whose case would be subject to transfer into this MDL may file their case directly in the District of Minnesota for pretrial proceedings only[.]" After pretrial proceedings, Plaintiff reserves its rights to seek transfer of this matter to an appropriate venue for trial.

## FACTS

6.      Plaintiff's Insured provided dental insurance and related services to its customers.

7.      Pursuant to a Business Services Payer Agreement with Plaintiff's Insured (the "Agreement"), Defendant agreed to provide a number of different services to Plaintiff's Insured, including:

a.      printing and mailing documents like Provider Termination Letters, Invoices, Member ID Cards, Medicare Denial Notices, Explanations of Benefits, and Utilization Management Letters;

b.      printing and mailing checks to providers for payment for their services; and

c.      providing an electronic claims processing clearinghouse to transmit insurance claims from providers to Plaintiff's Insured and payment from Plaintiff's Insured to such providers for their services.

---

[1] The sole member of Change Healthcare Solutions, LLC is Change Healthcare Operations, LLC. The sole member of Change Healthcare Operations, LLC is Change Healthcare Holdings, Inc. Change Healthcare Holdings, Inc. is a Delaware corporation with its principal place of business in Tennessee.

8.      On or about February 21, 2024, Defendant and a number of its parent, sibling, subsidiary, and affiliate companies experienced an entirely foreseeable and preventable ransomware incident.

9.      "Ransomware" is a form of malicious software or malware designed to encrypt files on computer devices, rendering any files and the systems that rely on them unusable. After deploying their malware to cripple vulnerable computer systems, malicious "threat actors" then demand ransom in exchange for decryption.

10.     Defendant and its affiliates were a prime target for ransomware attacks because they have significant resources to pay ransoms and because the information they collect and store is valuable on black markets.

11.     Defendant and its affiliates possessed highly sensitive data about millions of individuals as a result of the services they provided, not only to Plaintiff's Insured, but to large portions of the entire healthcare industry.

12.     According to testimony given before Congress by those affiliated with Defendant, the ransomware incident occurred after the username and password of a low-level, customer support employee for their access to Defendant's Citrix portal was posted in a Telegram group chat that advertises the sale of stolen credentials.

13.     While the account was a basic, user-level account with access only to specific applications, the compromised account had the authority to create accounts with administrative privileges.

14.     The compromised account was also not protected by multi-factor authentication.

15. Using the compromised credentials, the threat actors were thereafter able to infiltrate large swaths of Defendant's computer systems and servers wholly unnoticed by Defendant.

16. The threat actors exfiltrated terabytes of data belonging to millions of individuals and demanded Defendant and its affiliates pay a large ransom.

17. On February 21, 2024, upon discovering the ransomware, Defendant and/or its affiliates intentionally made the applications and services it provided to its customers inoperable. Defendant also announced the ransomware incident publicly.

18. Though Defendant has since restored all services to Plaintiff's insured, as a result of the incident, Defendant suddenly and without warning stopped providing Plaintiff with its contracted-for services for varying periods of time.

19. As a result of the sudden loss of Defendant's services, Plaintiff's Insured was forced to retain alternate vendors or take the services in-house at its own increased expense in order to continue to operate at or around the same capacity as before the incident. Plaintiff's Insured was also required to pay for additional internal labor in order to facilitate the retention of these new vendors and the undertaking of the services in-house. Plaintiff was also required to expend monies for resources necessary to carry out the services. In total, these expenses were over $1,000,000.

21. In the wake of the incident and damages described above, Plaintiff's insured submitted a claim to Plaintiff seeking coverage. Plaintiff reimbursed its Insured for its loss and is now subrogated to the rights of its Insured.

## COUNT I – BREACH OF CONTRACT

22. Plaintiff incorporates the preceding paragraphs by reference herein.

23. In the Agreement, Defendant promised to provide the contracted-for services, including the license to various software and applications necessary for such services, pursuant to the terms of the Agreement.

24. In breach of its promise to provide such services and the various express warranties related to the provision of the services, Defendant intentionally stopped providing such services, or was compelled to stop providing such services as a result of its own gross negligence, recklessness, and willful misconduct in the securing of their own computer systems.

25. Defendant further breached the Agreement by failing to comply with the provisions of the Agreement related to the Suspension or Termination of the services before suspending and/or terminating the services it provided Plaintiff's Insured.

26. Defendant also breached the Agreement by failing to provide contracted-for remedies related to its failure to perform their services.

27. Moreover, in breach of the Agreement, Defendant failed to maintain adequate safeguards to ensure the security, confidentiality, and integrity of Plaintiff's Insured's use of Defendant's services. These required safeguards were repeated throughout various components of the Agreement, including standards set forth in a Business Associate Agreement and other areas.

28. As a direct and proximate cause of Defendant's breaches of the Agreement, Plaintiff's insured suffered the damages described above.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant in an amount in excess of $1,000,000.00 plus costs incident to this suit, and attorney fees, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

**Dated:** <u>May 14, 2026</u>          BY: _____

**Kenneth T. Levine, Esq.**
**Andrew G. Hunt, Esq.**
301 E. Germantown Pike, 3rd Floor,
East Norriton, PA  19401
215-383-0081
215-383-0082 (fax)
Klevine@delucalevine.com
ahunt@delucalevine.com
*Attorneys for Plaintiff*